859 So.2d 259 (2003)
Kenda FITE, Plaintiff-Appellee,
v.
LOUISIANA TITLE COMPANY, Defendant-Appellant.
Nos. 36,393-WCA, 36,394-WCA.
Court of Appeal of Louisiana, Second Circuit.
October 24, 2003.
*260 Law Offices of Ronald F. Lattier by Ronald F. Lattier, Shreveport, Corey F. Pierce, for Appellant.
Kenda Fite, In Proper Person, Appellee.
Before BROWN, WILLIAMS, PEATROSS, MOORE and TRAYLOR (Pro Tempore), JJ.
TRAYLOR, Judge Pro Tempore.
This case is on remand from the Louisiana Supreme Court from our prior opinion, Fite v. Louisiana Title Company, 36,393 (La.App.2d Cir.09/18/02), 828 So.2d 165 ("Fite I"), wherein this Court reversed a portion of the judgment of the Workers' Compensation Judge ("WCJ") which had been in favor of Kenda Fite ("Fite"). For the following reasons, we find that the portion of the judgment in favor of Fite was manifestly erroneous, and we herein reverse.
As explained previously in Fite I, Fite was employed by Louisiana Title Company ("Louisiana Title") as an abstractor for approximately three and one-half years. She claims that during the course and scope of her employment, she sustained occupational diseases to her upper extremities, specifically, bilateral carpal tunnel syndrome, lateral epicondylitis, and ulnar nerve neuropathy. Louisiana Title investigated Fite's alleged injuries and paid her workers' compensation benefits from October 1, 1997 through June 1, 2000.
After a trial of the matter, and in oral reasons for judgment, the WCJ determined that both the bilateral carpal tunnel syndrome and the lateral epicondylitis condition were employment-related, as were the resulting surgeries for each. The WCJ concluded, however, that Fite's ulnar nerve neuropathy was not employment-related, and thus, the associated medical treatment of that condition was also not deemed to be employment-related. An appeal by Louisiana Title ensued,[1] wherein this Court reversed the judgment of the WCJ, stating that "the evidence which was relied upon by the WCJ simply was not sufficient to support the claims by Fite and certainly did not rise to the necessary standard of proof required to find an occupational disease existed." The Louisiana Supreme Court remanded the case with directions to this Court "to review the record under the manifest error standard *261 of appellate review." Fite v. Louisiana Title Co., 2002-2607 (La.06/27/03), 852 So.2d 983 ("Fite II").

DISCUSSION
Pursuant to La. R.S. 23:1031(B): "An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease...." (Emphasis added). As we noted previously in Fite I:
A claimant asserting an occupational disease must prove by a preponderance of evidence that there is a disability which is related to an employment-related disease, that the disease was contracted during the course of employment and that the disease is a result of the work performed. Hymes v. Monroe Mack Sales, 28,768 (La.App.2d Cir.10/30/96), 682 So.2d 871; Price v. City of New Orleans, 95-1851 (La.App. 4th Cir.03/27/96), 672 So.2d 1045, writ denied, 96-1016 (La.10/25/96), 681 So.2d 360. The causal link between an employee's occupational disease and work-related duties must be established by a reasonable probability. Hymes, supra; Shields v. GNB Technologies, Inc., 33,911 (La.App.2d Cir.10/04/00), 768 So.2d 774; Seal v. Gaylord Container Corp., 97-0688 (La.12/02/97), 704 So.2d 1161.
The claimant will fail if there is only a possibility that the employment caused the disease, or if other causes not related to the employment are just as likely to have caused the disease. Hymes, supra; Bryant v. Magnolia Garment Co., 307 So.2d 395 (La.App. 2d Cir.1975). Expert testimony is required to support a finding of an occupational disease. Hymes, supra; Price, supra; see also, Picard v. Dynamic Offshore Contractors, 618 So.2d 1183 (La.App. 3d Cir. 1993). (Emphasis ours).
Id. at 166-167.
As stated, Fite claimed that during the course and scope of her employment, she sustained occupational diseases to her upper extremities, specifically, bilateral carpal tunnel syndrome, lateral epicondylitis, and ulnar nerve neuropathy. For those conditions, she was treated by two doctors, Dr. John Knight ("Dr.Knight") and Dr. Marion Milstead ("Dr.Milstead"). Louisiana Title selected Dr. Eric George ("Dr. George") for a second opinion of Dr. Knight's diagnosis.
Fite first saw Dr. Knight in September 1997, and he subsequently performed four surgeries on her. Most significant of Dr. Knight's records are two reports, both dated September 11, 1997.[2] In his handwritten report of that date, Dr. Knight noted his opinion that Fite had "right arm pain several weeks from pulling books all day." His typed report of that same date lists *262 under her history (which presumably would have been given to him by Fite herself) that "[h]er job consists of pulling large books to research titles and she also writes significant amounts." Later in that same report, Dr. Knight made his "impression" that Fite's symptoms "are most likely attributable to [her] occupation."
Dr. Milstead, who became Fite's treating physician subsequent to Dr. Knight, never rendered an opinion as to the cause of her ailments. However, following Fite's initial appearance at trial (the trial was interrupted and resumed later), Dr. Milstead rendered a medical opinion on February 22, 2001 "that actually the [lateral epicondylitis] and the carpal tunnel had come on since the patient has really been off work and I do not feel that those two symptoms are related to the on-the-job injury...."
Finally, at the trial of the matter, Dr. George also opined that her conditions were not employment-related.
Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Crotwell v. Holloway Sportswear, 32-038 (La.App.2d Cir.06/16/99), 740 So.2d 748, 751, citing Seal, supra; Gilliam v. Manhattan/Whitaker Const. Co., 30,566 (La.App.2d Cir.05/13/98), 714 So.2d 101, writ not considered, 98-1845 (La.09/04/98), 723 So.2d 429. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Seal, supra; Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.07/01/97), 696 So.2d 551; Crotwell, supra.
Where there are two permissible views of the evidence, a fact-finder's choice between them can never be manifestly erroneous or clearly wrong. Thus, if the fact-finder's findings are reasonable in light of the record reviewed in its entirety, a court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Seal, supra; Crotwell, supra. Conversely, when a review of the evidence indicates that the fact-finder's findings are unreasonable, an appeal court may reverse such determination.[3]
After reviewing all of the evidence in connection with Fite's claim and applying the manifest error standard of review, we again conclude that Fite failed to meet her burden of proving that her conditions were caused by her employment. It was incumbent upon Fite to prove by a reasonable probability a causal link between her occupational diseases and her work-related duties. Here, the medical evidence presented by Fite was insufficient to prove that her conditions were "due to causes and conditions characteristic of and peculiar to [her] particular trade, occupation, process, or employment."
Specifically, the WCJ's reliance on Dr. Knight's medical opinion, particularly the reports of September 11, 1997, was unreasonable, making her final conclusion *263 manifestly erroneous.[4] In the case sub judice, our review of the medical reports of Dr. Knight does not indicate that he considered any detailed information regarding the particular aspects of Fite's job that would have caused her disease. In fact, it appears that the impression contained in Dr. Knight's September 11th report, which the WCJ referred to specifically in her oral reasons for judgment, was based only on the loose job description provided her by Fite (i.e., "[h]er job consists of pulling large books to research titles and she also writes significant amounts"). There is no evidence that Dr. Knight employed any sort of independent job analysis to confirm the exact duties of a title examiner or that he had any other independent information of what Fite's job entailed; thus, we conclude that Dr. Knight's medical reports lacked sufficient and reasonable foundation to show that Fite's ailments were "due to causes and conditions characteristic of and peculiar to" her particular job as a title examiner. Clearly, his opinion did not sufficiently establish a causal link between Fite's job and her disease, and it was unreasonable for the WCJ to give said reports greater weight in reaching a decision, making the final determination manifestly erroneous. See Myles v. Printpack, Inc., 35,355 (La.App.2d Cir.01/23/02), 806 So.2d 172, where the claimant's treating physician was unable to give an opinion regarding causation because he lacked precise knowledge of what the claimant's job entailed.
Granted, Fite testified that her job entailed lifting heavy record books in parish courthouses. In fact, Fite testified that she "probably pulled 100 to 200 books on one title." She also stated that she had to write continuously, "all day long." Finally, she stated that she carried her briefcase everyday. However, her testimony, along with the medical reports of one of her treating physicians, Dr. Knight, is not sufficient proof in light of the medical opinions of Dr. Milstead, another treating physician, and Dr. George. Notably, Fite was required to provide an expert medical opinion to support her claims regarding her condition. Clearly, Fite failed to prove by a preponderance of the evidence that she suffered a disability related to an employment-related disease, that the disease was contracted during the course of employment, and that the disease is a result of the work performed. The findings of the WCJ deciding otherwise were unreasonable and clearly in error.

CONCLUSION
For the foregoing reasons, the judgment of the WCJ in favor of Kenda Fite is hereby reversed, with costs of this appeal assessed to her.
REVERSED.
BROWN, C.J., dissents with written reasons.
WILLIAMS, J., dissents for the reasons assigned by Brown, C.J.
BROWN, C.J., dissenting,
Considering plaintiff's testimony and Dr. Knight's opinion as expressed in his reports, the WCJ found a causal link between the job and the diseases. Although *264 I also agree that Dr. Milstead's testimony was credible, I cannot say that the WCJ was unreasonable or clearly wrong. Thus, I respectfully dissent.
NOTES
[1] Fite did not appeal the finding that her ulnar nerve neuropathy was not employment-related.
[2] As noted by the supreme court in Fite II, in our previous opinion, Dr. Knight's second typed report dated September 11, 1997 was not considered, which omission, the supreme court stated, was in error. We have considered the report in our current review of the case. However, we note that our previous determination not to consider the report in Fite I was due to a procedural irregularity not within the realm of La. Admin. Code tit. 40, § 6209 (March 2002). Specifically, the transcript of the trial proceedings does not indicate that the particular exhibit, "J-3," was ever introduced and admitted into evidence-a procedural error seemingly committed by the attorneys (on the other hand, the record does reflect where other joint exhibits were introduced and admitted into evidence). The particular administrative rule referred to by the supreme court addresses a scenario regarding medical reports which seems distinct to the scenario in this case, i.e., a piece of evidence that, although seemingly agreed to by the parties, was inadvertently omitted at trial. Nonetheless, we will consider all of the medical reports in our current review.
[3] See Crotwell, supra, where this Court previously stated that:

[T]he plaintiff has failed to show that she had a disability related to an employment disease, that she contracted the disease during the course of her employment or that the disease was the result of work preformed. Said another way, the plaintiff simply failed to prove that she had a compensable occupational disease. The opinion of the WCJ that the plaintiff had an occupational disease is not reasonable and therefore is manifestly erroneous and clearly wrong.
[4] Although, we recognize the well established principle that greater weight should be given to the opinion of the treating physician, see Schouest v. J. Ray McDermott & Co., Inc., 411 So.2d 1042 (La.1982) and Scott v. Rutherford House, 35,645 (La.App.2d Cir.01/23/02), 806 So.2d 974, writ denied, XXXX-XXXX (La.05/24/02), 816 So.2d 852, a court is not bound to blindly give credence to the opinion of a claimant's treating physicians. Scott, supra; Davison v. Horseshoe Casino, Inc., 31,166 (La.App.2d Cir.10/28/98), 720 So.2d 785, writ denied, 1998-2950 (La.01/29/99), 736 So.2d 833.