# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

## 24-228

STANLEY SHREVE

VERSUS

BIO-LAB, INC.

**********

ON APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 3
PARISH OF CALCASIEU, NO. 19-02442
THOMAS E. TOWNSLEY, WORKERS' COMPENSATION JUDGE

**********

**JONATHAN W. PERRY**
**JUDGE**

**********

Court composed of Candyce G. Perret, Jonathan W. Perry, and Charles G. Fitzgerald, Judges.

**AFFIRMED.**

John J. Rabalais
Blake M. Alphonso
Rabalais Unland
70779 South Ochsner Boulevard
Covington, Louisiana 70433
(985) 893-9900
COUNSEL FOR DEFENDANT/APPELLANT:
    Bio-Lab, Inc.


Kevin L. Camel
Cox Cox Filo Camel Wilson & Brown, LLC
723 Broad Street
Lake Charles, Louisiana 70601
(337) 436-6611
COUNSEL FOR CLAIMANT/APPELLEE:
    Stanley Shreve

**PERRY, Judge.**

This is a workers' compensation claim based on alleged occupationally-induced hearing loss. The employer appeals the decision of the workers' compensation judge awarding the employee supplemental earnings benefits, medical expenses, penalties, and attorney fees for hearing loss caused by his employment. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

Stanley Shreve ("Mr. Shreve") began his employment with Olin Corporation, Inc., the predecessor of Bio-Lab, Inc. ("Bio-Lab"), on or about June 26, 1979. He was employed as an operator at Bio-Lab's Chemtura plant in Westlake for almost thirty-eight years until his retirement on March 31, 2017. Mr. Shreve experienced a progressive decline in his hearing, shown by historical audiograms starting in 1983. On April 3, 2019, an audiogram was conducted showing Mr. Shreve had a sensory neural hearing loss. On April 16, 2019, Mr. Shreve filed a disputed claim for compensation against Bio-Lab seeking benefits related to occupationally-induced hearing loss resulting from his employment. On August 7, 2019, Dr. Brad LeBert ("Dr. LeBert"),[1] Mr. Shreve's choice of treating physicians, opined that Mr. Shreve had noise-induced hearing loss because of his work at Bio-Lab and restricted his work within National Institute for Occupational Safety and Health ("NIOSH") compliant environments. On December 12, 2023, Dr. Blake LeBlanc ("Dr. LeBlanc")[2] evaluated Mr. Shreve and agreed with Dr. LeBert's opinion that the noise to which Mr. Shreve was exposed during his employment contributed to his

---

[1] Dr. LeBert is an otorhinolaryngologist ("ENT").

[2] Dr. LeBlanc, also an ENT, was Dr. LeBert's partner. Dr. LeBlanc became Mr. Shreve's treating physician after Dr. LeBert moved out of the area.

hearing loss. Dr. LeBlanc also agreed that Mr. Shreve was permanently restricted from working in a noisy environment.

Bio-Lab denied Mr. Shreve's hearing loss was caused by his employment and asserted that Mr. Shreve's claim had prescribed. Trial was held on January 3, 2024, after which the workers' compensation judge ("WCJ") took the matter under advisement and accepted post-trial briefs from each party.

On January 19, 2024, written reasons for judgment were handed down. Therein, the WCJ found that Mr. Shreve had satisfied his burden of proving by a preponderance of the evidence that his gradual hearing loss was the result of his exposure to hazardous noise conditions over the length of his employment with Bio-Lab. Thus, Mr. Shreve was entitled to medical and indemnity benefits; payment of $132.00 for his audiogram; payment of $414.00 for his medical visit with Dr. LeBert; and two years of supplemental earnings benefits ("SEBs") in the amount of $68,328.00 (104 weeks at a rate of $657.00/week).[3] Finally, Mr. Shreve was awarded penalties of $8,000.00 and attorney fees of $15,000.00 because Bio-Lab failed to reasonably controvert the claim and was arbitrary and capricious in handling the claim.[4]

A motion for a new trial was filed by Bio-Lab and denied by the trial court on January 25, 2024. Bio-Lab then filed the instant appeal.

## ASSIGNMENTS OF ERROR

Bio-Lab asserts five assignments of error:

1.    The Workers' Compensation Judge committed an error of law, warranting de novo review, by applying the incorrect legal

---

[3] Because Mr. Shreve had retired, his SEBs were limited to 104 weeks in accordance with La.R.S. 23:1221(3)(d)(iii).

[4] Bio-Lab was also cast with all costs of these proceedings.

2

standard and/or burden of proof necessary to determine whether Plaintiff/Appellee is disabled, and thereby entitled to indemnity benefits, as a result of his alleged hearing loss.

2. The Workers' Compensation Judge committed manifest/reversible error, and/or his decision was clearly wrong, in finding that Plaintiff/Appellee is disabled, and thereby entitled to indemnity benefits, as a result of his alleged hearing loss.

3. The Workers' Compensation Judge committed manifest/reversible error, and/or his decision was clearly wrong, in finding that Plaintiff/Appellee has established a causal link between his work-related duties and his alleged hearing loss.

4. The Workers' Compensation Judge committed manifest/reversible error, and/or his decision was clearly wrong, in finding that Plaintiff/Appellee's claim for workers' compensation benefits as a result of his alleged hearing loss has not prescribed.

5. The Workers' Compensation Judge committed manifest/reversible error, and/or his decision was clearly wrong, in finding that Plaintiff/Appellee is entitled to penalties and/or attorney fees.

## APPELLANT'S ARGUMENTS

Bio-Lab argues the WCJ applied the wrong legal standard and/or burden of proof necessary to determine whether Mr. Shreve is disabled because of his alleged hearing loss. Bio-Lab contends the recommendation to avoid loud noise made by Mr. Shreve's treating physician does not satisfy the applicable standard of law and/or burden of proof necessary to establish the existence of a disability. Thus, Bio-Lab asserts this court should review the evidence de novo.

In the event this court finds the WCJ did not commit an error of law, Bio-Lab argues the WCJ was manifestly erroneous in finding Mr. Shreve is disabled because of his alleged hearing loss. Bio-Lab contends the WCJ erred in finding that Mr. Shreve is disabled based upon Dr. LeBert's NIOSH recommendation.

3

Bio-Lab argues no causal connection exists between Mr. Shreve's alleged hearing loss and his employment with Bio-Lab. Bio-Lab contends the WCJ was manifestly erroneous in finding Mr. Shreve had established a causal link between his work-related duties and his alleged hearing loss. Thus, Bio-Lab argues Mr. Shreve's claim for workers' compensation benefits should have been denied.

Bio-Lab also argues the WCJ erred in determining that Mr. Shreve's claim for workers' compensation benefits had not prescribed. According to Bio-Lab, Mr. Shreve's claim for indemnity benefits is prescribed pursuant to La.R.S. 23:1031.1, and his claim for medical treatment related to his hearing loss is prescribed pursuant to La.R.S. 23:1209.

Finally, Bio-Lab contends the WCJ was manifestly erroneous in finding that Mr. Shreve is entitled to statutory penalties under La.R.S. 23:1201 as well as an award of attorney fees. Bio-Lab argues they have reasonably controverted Mr. Shreve's workers' compensation claim; thus, the WCJ erred in awarding penalties of $8,000.00 and attorney fees in the amount of $15,000.00.

**APPELLEE'S POSITION**

Mr. Shreve asserts the WCJ did not err in ruling he met his burden of proving his entitlement to workers' compensation benefits. Mr. Shreve points out that his treating physicians both testified that the noise to which he was exposed while employed at Bio-Lab caused his hearing loss and both permanently restricted Mr. Shreve from working in a noisy environment. Additionally, both treating physicians opined that the noise at the Chemtura facility caused Mr. Shreve's hearing loss. According to Mr. Shreve, Bio-Lab did not call a single witness, did not obtain a second medical opinion, and did not introduce any evidence to dispute either the testimonies of Mr. Shreve or his treating physicians.

4

Mr. Shreve contends the WCJ correctly applied the prescription rules for an occupational illness under La.R.S. 23:1031.1(E), which states that a claim must be filed "within one year of the dates that: (1) [t]he disease manifested itself[,] (2) [t]he employee is disabled from working as a result of the disease[, and] (3) [t]he employee knows or has reasonable grounds to believe that the disease is occupationally related[.]" Mr. Shreve argues Bio-Lab misinterpreted the law on prescription for occupational disease claims. He contends such a misinterpretation is not sufficient to justify a refusal to pay a demand for workers' compensation benefits.

Mr. Shreve also argues the WCJ properly awarded him penalties and attorney fees for failing to reasonably controvert his claim. According to Mr. Shreve, Bio-Lab misinterpreted the law on prescription for occupational disease claims to justify their failure to provide payment of his workers' compensation benefits.

## STANDARD OF REVIEW

Appellate courts review the factual determinations in workers' compensation cases using the manifest error or clearly wrong standard of appellate review. *Smith v. Packaging Corp. of America*, 22-171 (La.App. 3 Cir. 11/30/22), 354 So.3d 132, *writ denied*, 23-001 (La. 2/24/23), 356 So.3d 343. The manifest error or clearly wrong standard of review was explained by the supreme court in *Stobart v. State, through Dep't of Transp. & Dev.*, 617 So.2d 880, 882 (La.1993) (internal citations and quotation marks omitted), as:

> [T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. However, where documents or objective evidence so

5

contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Nonetheless, this Court has emphasized that the reviewing court must always keep in mind that if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.

## LAW AND DISCUSSION

*Disability*

In its first and second assignments of error, Bio-Lab argues Mr. Shreve failed to prove he is disabled and, thus, entitled to SEBs. According to Bio-Lab, a de novo review of the evidence is necessary because the WCJ applied the incorrect standard and/or burden of proof necessary to determine whether Mr. Shreve is disabled. Further, Bio-Lab alleges Mr. Shreve presented no evidence he was unable to earn wages after the date of his hearing loss and the WCJ erred in supporting its disability determination with Dr. LeBert's NIOSH-based recommendation that would apply to anyone.

In its brief to this court, Bio-Lab also states that the WCJ's final judgment in this matter "did not provide any discernable legal standard or jurisprudential precedent by which he determined that Mr. Shreve is disabled as a result of his alleged hearing loss." Additionally, Bio-Lab asserts "Mr. Shreve has not submitted any objective evidence to establish a 'wage loss,' outside of his unsubstantiated desire for a zero-dollar earning capacity."

In its reasons for judgment in favor of Mr. Shreve, the WCJ wrote:

> I found Stanley Shreve to be very credible. He gave this Court a good description of the equipment he worked around and the hazardous noise conditions he was subjected to during the course and scope of his employment. The record contains audiograms and medical testimony

6

that demonstrate he suffered some occupational hearing loss, even though not all is solely attributable to the hazardous noise condition of his employment. As such, the Court finds that the claimant has proven by a preponderance of the evidence that he suffered an occupationally related noise induced hearing loss. Stanley Shreve was given restrictions by Dr. LeBert and Dr. LeBlanc to avoid loud noise in all settings and as such would not be able to return to his work at Bio-Lab, Inc. or any industrial setting exposing him to loud noises. Stanley Shreve testified that in his work as a setup supervisor/lead operator, he has to troubleshoot equipment and can be exposed to loud noise from the equipment from 10 minutes up to 2 hours. Consequently, he would not be able to return to his previous (last job) he held with Bio-Lab, Inc., where he was a high-wage earner.

Given the claimant's age, limited education, lengthy history of specialized work, and the restrictions on avoiding loud noise, the claimant has made a prima facie case showing that he presumably is unable to return to his prior job and earn ninety (90) percent of his pre-injury wages, and the burden would shift to the employer to establish a wage earning capacity, which it failed to do. However, due to Stanley Shreve retiring, he would be limited to only two years of SEB[s].

Louisiana Revised Statutes 23:1221(3)(a)(i) requires that a claimant prove by a preponderance of the evidence that he is unable to earn wages equal to ninety percent or more of wages he was earning at the time of injury "whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured[.]" In *Clay v. Our Lady of Lourdes Reg'l Med. Ctr., Inc.*, 11-1797, p. 4 (La. 5/8/12), 93 So.3d 536, 539 (citations omitted), the supreme court explained the standards for proving entitlement, stating:

> [Louisiana Revised Statutes] 23:1221(3)(a) provides that an employee is entitled to receive SEBs if he sustains a work-related injury that results in his inability to earn 90% or more of his average pre-injury wage. Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. Once the employee's burden is met, the burden shifts to the employer who, in order to defeat the employee's claim for SEBs, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or her employer's community or reasonable geographic region.

In this case, Mr. Shreve presented medical opinions from Drs. LeBert and LeBlanc, supporting his inability to work in noisy conditions, such as his job at Bio-Lab required. The record lacks evidence offered by Bio-Lab to carry its burden of establishing the availability of any job for Mr. Shreve. Consequently, we find the WCJ did not err in finding Mr. Shreve is entitled to indemnity benefits.

*Causation*

In its third assignment of error, Bio-Lab disputes that Mr. Shreve developed hearing loss because of his work at its Chemtura facility. It argues the WCJ erred in finding Mr. Shreve established a causal link between his alleged hearing loss and his employment activities.

Louisiana Revised Statutes 23:1031.1(B) provides, in pertinent part, "An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and particular to the particular trade, occupation, process, or employment in which the employee is exposed to such disease." In *Rose v. Maison Deville Care Center*, 05-1307, p. 3 (La.App. 3 Cir. 4/5/06), 927 So.2d 625, 627, *writ denied*, 06-1054 (La. 9/1/06), 936 So.2d 205, this court observed:

> A claimant asserting an occupational disease must prove by a preponderance of evidence that there is a disability which is related to an employment-related disease, that the disease was contracted during the course of employment, and that the disease is a result of the work performed. *Hymes v. Monroe Mack Sales*, 28,768 (La.App. 2 Cir. 10/30/96), 682 So.2d 871. The causal link between an employee's occupational disease and work-related duties must be established by a reasonable probability. *Id*.

The record contains Mr. Shreve's testimony about the different tasks he performed as well as the loud noise produced by different pieces of equipment, which included vibrating equipment, blowers, boilers, and air compressors. The record also contains medical opinions from two ENTs on the issue of causation.

8

Both physicians, Drs. LeBlanc and LeBert, testified that their evaluations of Mr. Shreve revealed hearing loss which they attributed to his noisy work environment. Dr. LeBert stated it was his opinion that Mr. Shreve's exposure to noise from the various pieces of equipment contributed to Mr. Shreve's hearing loss. Likewise, Dr. LeBlanc testified that in reviewing Mr. Shreve's medical records and historical audiograms, Mr. Shreve's hearing loss progressively worsened over the course of his employment with Bio-Lab.

The record reveals Bio-Lab did not call a single witness, did not obtain a second medical opinion, and did not introduce any evidence to dispute either the testimonies of Mr. Shreve or his treating physicians. Thus, we find no error in the WCJ's determination on the issue of causation.

*Prescription*

Bio-Lab's fourth assignment of error concerns the WCJ's determination that Mr. Shreve's workers' compensation claim was not prescribed. The WCJ found that Mr. Shreve's claim had not prescribed under La.R.S. 23:1031.1 because it was filed within one year of the date that Dr. LeBert diagnosed Mr. Shreve with noise-induced hearing loss caused at least in part due to the work environment. Accordingly, Dr. LeBert restricted Mr. Shreve from working in a noisy environment such as the setting in which he worked during the course and scope of his employment with Bio-Lab.

Bio-Lab argues that Mr. Shreve was aware from prior audiograms that were periodically performed at the Chemtura facility that he had hearing loss as early as August 15, 1983. Bio-Lab further asserts Mr. Shreve testified he began to notice he was having trouble hearing, and he began to suspect his hearing loss was caused by his noisy work environment sometime in 2010. Thus, Bio-Lab alleges Mr. Shreve

should have filed his disputed claim for workers' compensation no later than 2011 or 2012.

Bio-Lab also argues Mr. Shreve's claim is untimely even if the initial disability date of August 7, 2019, the date on which Dr. LeBert first placed any work restrictions on Mr. Shreve, was used. Bio-Lab contends Mr. Shreve's claim would be timely but for the fact that by that time, August 2019, Mr. Shreve had already voluntarily retired for reasons which had nothing to do with his alleged hearing loss.

Louisiana Revised Statutes 23:1031.1 governs compensation for disability resulting from occupational diseases. Gradual noise induced hearing loss caused by occupational exposure to hazardous noise levels is an occupational disease under the Louisiana Workers' Compensation Act. *Arrant v. Graphic Packaging Int'l, Inc.*, 13-2878 (La. 5/5/15), 169 So.3d 296.

Louisiana Revised Statutes 23:1031.1(E) sets forth the prescriptive period applicable to occupational disease claims and provides:

> All claims for disability arising from an occupational disease are barred unless the employee files a claim as provided in this Chapter within one year of the date that:
>
> (1) The disease manifested itself.
>
> (2) The employee is disabled from working as a result of the disease.
>
> (3) The employee knows or has reasonable grounds to believe that the disease is occupationally related.

In *Bynum v. Capital City Press, Inc.*, 95-1395 (La. 7/2/96), 676 So.2d 582, the supreme court held the existence of all three factors in La.R.S. 23:1031.1(E) is necessary to trigger the commencement of prescription for claims of disability arising from an occupational disease.

On April 16, 2019, Mr. Shreve filed a disputed claim for compensation, alleging occupational noise-induced hearing loss. The record reflects Dr. LeBert restricted Mr. Shreve's employment within NIOSH complaint environments on August 7, 2019.

We find the WCJ did not err in determining that Mr. Shreve's workers' compensation claim was not prescribed. Mr. Shreve's claim was timely filed within one year of the date that he was permanently disabled from working because of his hearing loss. *See Caldwell v. West Fraser (South), Inc.*, 23-731 (La.App. 3 Cir. 8/21/24), 393 So.3d 982.

*Penalties and Attorney Fees*

Bio-Lab's final assignment of error challenges the WCJ's award of penalties. Bio-Lab contends the WCJ erred in finding it was unreasonable for denying Mr. Shreve's claim for indemnity benefits, two medical bills, and vocational rehabilitation which resulted in Bio-Lab being assessed with the maximum allowable penalty of $8,000.00, and attorney fees of $15,000.00. Bio-Lab argues it denied Mr. Shreve's claim for workers' compensation benefits because it understood it to be prescribed and/or because no causal link existed between Mr. Shreve's job and his alleged hearing loss. Thus, Bio-Lab asserts that the WCJ wrongly held that its denial was unreasonable in its handling of Mr. Shreve's claim.

The penalties for failure to make timely payments of compensation and/or medical expenses are set forth in La.R.S. 23:1201(F)(2), which provides, in pertinent part (emphasis added):

> [F]ailure to provide payment in accordance with this Section . . . *shall* result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day in which any and all compensation or medical benefits remain unpaid . . . together with reasonable attorney fees for

each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars. . . . Penalties *shall* be assessed in the following manner:

. . . .

(2) This Subsection *shall not apply if the claim is reasonably controverted* or if such nonpayment results from conditions over which the employer or insurer had no control.

The Louisiana Supreme Court has long held, "The purpose of imposition of penalties and attorney fees is to discourage indifference and undesirable conduct by employers and insurers." *Authement v. Shappert Eng'g,* 02-1631, p. 11 (La. 2/25/03), 840 So.2d 1181, 1188. When determining whether penalties and attorney fees should be imposed on an employer, the crucial inquiry is "whether the employer had an articulable and objective reason to deny benefits at the time it took action." *Id*. "To reasonably controvert a claim, an employer must have sufficient factual and medical information to reasonably counter the factual and medical information provided by the employee." *McCarthy v. State, Off. of Risk Mgmt.*, 94-033, p. 5 (La.App. 3 Cir. 10/5/94), 643 So.2d 886, 889.

"The decision to assess penalties and attorney fees is a question of fact that is in the great discretion of the WCJ, and it should not be reversed on appeal absent manifest error." *Jeansonne v. Dep't of Pub. Safety & Corr. Youth Servs., Off. of Juv. Just.*, 17-635, p. 9 (La.App. 3 Cir. 6/6/18), 247 So.3d 893, 900–01, *writ denied*, 18-1148 (La. 10/29/18), 254 So.3d 1209. The factors used in determining attorney fees in workers' compensation cases are "the degree of skill and ability exercised, the amount of the claim, the amount recovered for the plaintiff, and the amount of time devoted to the case." *Naquin v. Uniroyal, Inc.*, 405 So.2d 525, 528 (La.1981).

12

Bio-Lab chose to test their arguments relating to prescription and causation in the court below to challenge Mr. Shreve's entitlement to workers' compensation benefits. The WCJ rejected those arguments, and we have affirmed his rulings. "Reliance on an erroneous interpretation of a law subjects the employer to penalties and attorney fees." *Smith*, 354 So.3d at 144. Thus, we find no error in the WCJ's determination that penalties and attorney fees were warranted in this matter.

**DECREE**

For the foregoing reasons, we affirm. All costs of this proceeding are assessed against Bio Lab, Inc.

**AFFIRMED.**